# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| MICHAEL PARRY | * |
| Petitioner | * |
| v. | * Crim. No. PJM 15-0488 |
| | * Civil No. PJM 17-0285 |
| UNITED STATES OF AMERICA | * |
| Respondent. | * |

## MEMORANDUM OPINION

Michael Parry, *pro se*, has filed a Motion for Sentence Reduction And/Or Modification Pursuant to the Provisions of 18 U.S.C. § 3582 and/or 18 U.S.C. § 2255. ECF No. 29. For the reasons set forth below, the Court **DENIES** the Motion.

## I. FACTUAL AND PROCEDURAL BACKGROUND

On September 4, 2014, the Government filed an Information charging Parry with one count of wire fraud in violation of 18 U.S.C. § 1343, and one count of money laundering in violation of 18 U.S.C. § 1957, alleging that Parry used his position as an executive of the American Registry of Pathology ("ARP") to defraud ARP out of money intended for medical studies. ECF No. 1. On September 17, 2015, Parry pled guilty to both Counts, and on January 29, 2016, this Court sentenced him to 48 months imprisonment on each count, to be served concurrently. ECF No. 21.

The factual predicate was this:

In January 1998, Parry was hired by ARP as its Director of Operations. ECF No. 7. In January 2014, he was promoted to Executive Director, a role he had been acting in since October

2011. *Id.* As Director of Operations and Executive Director, Parry had authority to direct payment to ARP's vendors from ARP's accounts, including an account at Bank of America. *Id.*

The International Registry of Pathology ("IRP") was incorporated as a Maryland non-profit 501(c)(3) organization in 2003, its purpose being to promote the study of pathology. *Id.* Dr. William Gardner served as the President and Parry served as Treasurer. *Id.* After Dr. Gardner's death in October 2011, Parry had sole control over the IRP bank account. *Id.*

Between sometime in early 2010 until early 2014, Parry devised a scheme to defraud ARP by directing payments from ARP to IRP under the guise of research grants. *Id.* He fabricated documents, including doctored invoices and e-mails, to justify the payments from ARP to IRP in the event he was challenged by APR's auditors. *Id.* Once the money was transferred to IRP's account, Parry transferred it to his own personal account. *Id.* In total, Parry transferred approximately $2.1 million dollars to himself by way of the IPR account. *Id.*

Before Parry's actions were discovered, Parry himself brought them to the attention of ARP's auditor and his employer and assisted ARP and the Government in calculating the damages caused by his actions. ECF No. 13. Prior to sentencing, Parry also paid ARP the entire amount of restitution owed under the plea agreement ($2,199,504.09) plus an addition amount ($31,962.51), bringing the total restitution payment to $2,231,466.60. *Id.*

The presentence report calculated Parry's Total Offense Level as 24 under the Sentencing Guidelines, based on an Adjusted Offense Level of 27 and a three-level downward departure for acceptance of responsibility. ECF No. 13. The Government disagreed with Probation's calculation, and argued that an extra point should be added to Parry's Adjusted Offense Level pursuant to U.S.S.G. § 2S1.1(b)(2)(A)("Laundering of Monetary Instruments; Engaging in Monetary Transactions in Property Derived from Unlawful Activity"), which would result in a

Total Offense Level of 25. ECF No. 15. The Court agreed with the Government, and established Parry's final Total Offense Level at 25, which, with a Criminal History Category of I, resulted in a guidelines range of 57-71 months of imprisonment. ECF No. 22.

At sentencing, Parry's counsel argued that Parry should be sentenced to probation in recognition of his acceptance of responsibility, his repayment of the restitution, and his cooperation with the Government and ARP during the investigation. ECF No. 28. Counsel also presented evidence that both Parry and his wife suffered from mental conditions that would be aggravated by his long-term imprisonment. *Id.* Taking into account all the arguments made by counsel, the Court rejected Parry's request for straight probation, but agreed to a sentence 9 months below the bottom of the guidelines, i.e. 48 months imprisonment on each of the two counts, to be served concurrently, followed by two years of supervised release. ECF No. 21.

On January 31, 2017, Parry filed the present Motion for Sentence Reduction and/or Modification pursuant to 18 U.S.C. § 3582 and 18 U.S.C. § 2255. ECF No. 29. He argues that he is entitled to have his sentenced reduced or his conviction vacated on the grounds that his counsel was ineffective during the sentencing hearing. *Id.*

On February 6, 2017, the Court directed Parry to supplement his Motion by completing a form to assist him in organizing his claims. ECF No. 30. On March 30, 2017, Parry filed a supplemental Motion to Vacate, Set Aside, or Correct Sentence, consistent with the Court's instructions. ECF No. 31. On June 6, 2017, the Government filed its Opposition, and on July 5, 2017, Parry filed a Reply. ECF No. 37.

## II. ANALYSIS

### 1. Parry's § 2255 Motion

Under §2255, a prisoner in federal custody can file a motion challenging the legality of a federal sentence on the basis that it was imposed in violation of the Constitution. 28 U.S.C. § 2255. The petitioner bears the burden of providing his grounds for collateral relief by a preponderance of the evidence. *See Vanater v. Boles*, 337 F.2d 898, 900 (4th Cir. 1967).

The Sixth Amendment right to counsel "applies during critical stages in the sentencing process . . . and includes a right to effective assistance of counsel." *United States v. Johnson*, 935 F.2d 47, 49 (4th Cir. 1991). A petitioner alleging ineffective assistance of counsel must satisfy the two-prong test set forth in *Strickland v. Washington*, 466 U.S. 668 (1987). "To establish a claim of ineffective assistance of counsel, a defendant must show that: (1) counsel's representation fell below an objective standard of reasonableness; and (2) there is a reasonable probability that he was prejudiced by counsel's unprofessional errors." *United States v. Soto*, 10 F. App'x 226, 228 (4th Cir. 2001) (citing *Strickland*, 466 U.S. at 688, 694).

### A.  *Parry Has Failed to Show that His Counsel was Ineffective*

The standard for assessing an attorney's performance is highly deferential, *United States v. Rangel*, 781 F.3d 736, 742 (4th Cir. 2015), and an attorney's performance must fall outside a "wide range of reasonable professional assistance" to be considered ineffective. *Strickland*, 466 U.S. at 668. Parry argues that counsel's performance at his sentencing hearing fell below "reasonable professional assistance" in four respects: (1) she failed "to effectively represent [him] in cooperating with the Victim's representatives;" (2) she did not competently articulate her arguments or respond adequately to instructions by the Court; (3) she did not offer testimony of live witnesses during sentencing; and (4) she failed "to provide the Court with reasonable and meaningful sentencing alternatives." ECF No. 29. None of these arguments passes muster.

First, Parry argues that counsel failed "to effectively represent [him] in cooperating with the Victim's representatives." ECF Nos. 29 & 31. Specifically, counsel allegedly failed to properly emphasize his cooperation with law enforcement and the victim during the investigation of his crimes, or to sufficiently highlight his pre-sentencing payment of the full restitution amount. *Id.* The record is clear, however, that the Court noted the fact of this cooperation when it ultimately sentenced Parry to an imprisonment term below the guidelines range, stating specifically that it is "rather unusual that one makes full restitution, particularly in this magnitude, by the time of sentencing." Hr'g. Tr. at 25:7-8, ECF No. 28. The Court does not find that counsel failed to properly assert this argument.

Second, Parry contends that counsel did not competently articulate her arguments or respond adequately to instructions by the Court. ECF Nos. 29 & 31. Parry appears to take exception to counsel's argument for a downward variance of the guidelines range, noting that she appeared to confuse requesting a *departure* from the guidelines as opposed to a *variance* of the guidelines. *Id.* He notes that the Court seemed annoyed by counsel's presentation when it stated, "You actually have gone through your whole allocution, way beyond a variance. . . . You made your basic final argument for sentencing. I'm not going to let you argue it again when you come through, so that you understand where you are." Sentencing Hr'g Tr. at 24:15-20, ECF No. 28.

Even though counsel may have confused a variance with a departure, they both essentially seek the same result—the reduction of a sentence to below that indicated by the initial guidelines range. And in this respect, the record shows that the Court and counsel engaged in an extended discussion regarding Parry's sentence, in which the Court had ample opportunity to consider her arguments for a less than guidelines sentence, whether characterized as a variance or a departure. *See, generally*, Sentencing Hr'g Tr., ECF No. 28. Furthermore, counsel submitted

5

a lengthy written sentencing memorandum to the Court two weeks before the hearing, which outlined her request for a below guidelines sentence, which provided a detailed history of Parry and his family. ECF No. 15. Counsel's presentation in this regard did not fall below an objective standard of reasonableness.

Third, Parry asserts that counsel was ineffective for failing to offer live witness testimony at his sentencing, specifically that of his wife and his forensic psychologist, Dr. Anita Boss. ECF Nos. 29 & 31. He asserts that his wife would have explained "the extent to which [her] preexisting and longstanding cognitive impairment would worsen" if he were incarcerated and that Dr. Boss would have testified that his "depression may have contributed to his criminal activities." ECF No. 31 at 8.

"[D]ecisions concerning the calling of witnesses are matters of strategy left to the attorney, and ordinarily cannot constitute ineffective assistance." *Rowsey v. United States*, 71 F.Supp. 585, 609 (E.D. Va. 2014). Furthermore, under the Sentencing Guidelines, "family ties and responsibilities are not ordinarily relevant in determining whether a departure may be warranted." U.S.S.G. §5H1.6. *See also United States v. King*, 226 Fed. Appx. 305, 309 (4th Cir. 2007) (departure for family responsibilities reserved only for "extraordinary circumstances").

Under the circumstances present here, whether to call live witnesses was a matter of strategy within counsel's discretion, and, particularly given her written submissions, she may well have valid reasons for not doing so. Thus, counsel had already included evidence regarding Parry and his wife's mental conditions through letters supplied to the Court, including letters from Parry's wife, his mother-in-law, and his counselor, as well as multiple reports of neuropsychological evaluations of his wife. Counsel referred to this information during her allocution. In short, it cannot be said that adding live testimony by Parry's wife or Dr. Boss at

sentencing, in addition to the extensive written documents reflecting their views, would have in any way affected the outcome and in no sense presented the "extraordinary circumstances" that would have lead the Court to consider a sentence further below the guidelines than the Court in fact went. Counsel's failure to provide live witnesses was not objectively unreasonable so as to sustain an ineffective assistance claim.

Finally, Parry argues that counsel was ineffective by failing to "to provide the Court with reasonable and meaningful sentencing alternatives." ECF Nos. 29 & 31. Rather than recommend probation, Parry contends that counsel should have proposed "a combination of imprisonment, supervised release to include a period of confinement in the home, and substantial community service." ECF No. 31 at 9. This argument is as infirm as the others.

In both her sentencing memorandum and in her allocution, counsel *did* account for the possibility that Parry might be sentenced to incarceration, and in fact made several softening recommendations. In her sentencing memorandum, she wrote that "[i]f this Court were to . . . impose a term of incarceration, we would respectfully request that this Court's order include a judicial recommendation to the Bureau of Prisons that Mr. Parry serve his sentence at [Pensacola] and that he be evaluated for and accepted into the Residential Drug Abuse Program." ECF 15 at 1. Further, at the sentencing hearing, counsel argued that "[i]f the Court is inclined to place Mr. Parry in the Bureau of Prisons, we would ask for a term of incarceration much less than what's being sought by the government," ECF No. 20 at 23, reiterating her previous requests that Parry serve his sentence at Pensacola and be enrolled in a drug treatment program. Finally, counsel asked that Parry be allowed to self-surrender to accommodate his college schedule. The fact that counsel could have asked for even greater accommodations for her client does not establish that Parry was underserved from a constitutional stand point.

7

In sum, the Court finds that none of the basis that Parry asserts is sufficient to find that his counsel was constitutionally ineffective.

### B. *Parry has Failed to Establish Prejudice*

Even if the Court were to find that Parry's counsel was constitutionally ineffective, he has failed to show that there is a reasonable probability that such ineffective assistance prejudiced him. After a lengthy sentencing hearing, the Court sentenced Parry to an imprisonment term below the guidelines range, noting that this variance was justified by his cooperation with the victim and full repayment of the restitution amount. Hr'g Tr. at 47:18-24, ECF No. 28 ("[T]he fact, I must say, that you did pay restitution in prompt fashion is something I do take into account. I don't think it's the kind of thing where you give a departure, but it is somewhat unusual that someone pays full restitution by the time of sentencing. I think that's certainly a commendable fact in your favor that I really need to account for.")

At the same time, the Court recognized that the imprisonment term was appropriate given the magnitude of the offense, the duration of the misconduct, and the effect that the misconduct had on the corporate victim and its employees. *Id.* at 47:25-48:6 ("But I put all this mix together and I need to come up with a sentence which I think is fair and appropriate both to—first of all, to the community and then to the company, and then to you. There's not—your welfare does not prevail over everybody else's.").

Parry was in no way prejudiced by counsel's performance.

### 2. **Parry's § 3582 Motion**

In addition to his § 2255 claim, Parry also seeks a "sentence reduction and/or modification pursuant to the provisions of 18 U.S.C. Section 3582." ECF No. 29 at 1.

8

Per that statute, "the court may not modify a term of imprisonment once it has been imposed," except upon motion of the Director of the Bureau of Prisons, or if the defendant was sentenced to a term of imprisonment based on a sentencing range that was subsequently lowered by the United States Sentencing Commission, or if the modification is expressly permitted by statute or by Rule 35 of the Federal Rules of Criminal Procedure. 18 U.S.C. § 3582 (1) & (2). Rule 35 provides that a sentence may be corrected or reduced (a) within 14 days after sentencing, if the sentence resulted from "clear error"; or (b) upon the government's motion, due to the defendant's substantial assistance. Fed. R. Crim. P. 35. Parry does not specify in his motion which, if any, provision of law permits the reduction or modification of his sentence.

In fact, none of the considerations that might permit modification of Parry's sentence are present. There has been no motion from the Government or Bureau of Prisons. His sentence was not based on a Guidelines range that has been subsequently lowered. His sentence did not result from "clear error," and it has been far longer than fourteen days since the sentence was imposed in February, 2016. In short, Parry is not eligible for a sentence reduction under 18 U.S.C. § 3582.

## III. CONCLUSION

For the foregoing reasons, the Court **DENIES** Parry's Motion for Sentence Reduction And/Or Modification Pursuant to the Provisions of 18 U.S.C. § 3582 and/or 18 U.S.C. § 2255. ECF No. 29.

A separate Order will issue.

/s/

**PETER J. MESSITTE**
**UNITED STATES DISTRICT JUDGE**

**April 20, 2018**